UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JAWAD "JOE" QUASSANI,<br><br>    Defendant. | 2:11-CR-00409-LRH-CWH<br><br>ORDER |

Before the court is petitioner Jawad "Joe" Quassani's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 149.[1] The United States filed a response (ECF No. 151), to which Quassani replied (ECF No. 154).

**I.    Background**

This case involves a mortgage-fraud scheme designed to defraud lenders into issuing inflated mortgages for residential properties purchased by a straw buyer. The scheme was implemented in order to generate kickbacks and increased commissions for the conspirators: Quassani, Anita Mathur, and Shirjil "Shawn" Qureshi. At the time, Quassani worked as a loan officer and office manager for Rocket Funding Group, a mortgage brokerage in Las Vegas, Nevada. In this position, Quassani would assist buyers in applying for and acquiring a home mortgage from a lender. Qureshi was a close friend of Quassani and worked as a real-estate agent and as a loan officer for a different mortgage brokerage. Anita Mathur recruited George

---

[1] This citation refers to the court's docket number.

Butler, the straw buyer in this scheme. In their capacity as loan officers, Quassani and Qureshi each helped Butler apply for and eventually obtain several mortgages in connection with two properties: (1) Raveno Bianco, Las Vegas, Nevada; and (2) Moraine Drive, Henderson, Nevada.

Qureshi located both properties and convinced the sellers to substantially increase their selling prices based on representations that the seller would contribute a portion of the sale proceeds to property improvements. For example, the Raveno Bianco property was originally listed at $529,000, but Butler executed a purchase agreement with the seller for $605,000, as well as an addendum in which the seller promised to contribute $60,000 after closing towards the construction of a pool and spa.

Quassani was the loan officer that assisted Butler in filling out the application for a mortgage for the Raveno Bianco property from First National Lending Services (aka Sierra Pacific Mortgage) ("First National"). In order to ensure that Butler was approved for a mortgage large enough to fully purchase the property at the inflated asking price, Quassani listed Butler's monthly income on the application as more than three times his actual income. Quassani also falsely indicated on the form that the home was being purchased by Butler as his primary residence.[2] Based on this false information, First National approved Butler for a $605,000 loan, which was used to purchase the Raveno Bianco property in March 2007.

The mortgage documents omitted reference to the $60,000 improvement addendum and First National had no knowledge of the agreement. After closing, however, the title company issued a $60,000 check to AKM Investments, a shell company created and controlled by co-conspirator Mathur. The conspirators never intended to use the money for property

---

[2] At trial, Janet Lewis, the Vice President of Operations at First National, testified that the issue of whether a borrower is seeking a mortgage for a primary residence versus for an investment property is a risk factor that determines in part what percentage of the purchase price First National is willing to lend. ECF No. 99 at 126–27. This is due to the fact that loans for primary-residence purchases are less risky because buyers are more likely to continue making mortgage payments for a property in which they reside. *Id*. Lewis testified that First National would not have lent a buyer 100 percent of the value of a property being purchased as an investment. *Id*. Butler testified that Quassani knew that the property was being purchased as an investment but that Quassani decided to classify it on the loan application form as a primary residence in order to ensure the loan was approved for the full purchase price of the house. *Id*. at 78.

improvements. Instead the $60,000 was the kickback—often referred to as "cash back at closing"—that the conspirators shared, along with the inflated commissions that Quassani and Qureshi earned as the respective loan officer and real-estate agent for the deal.

Within weeks, the conspirators applied the same scheme for the purchase of the Moraine property, once again using Butler as the straw buyer. The conspirators purposely timed the loan applications in close proximity so that the lenders would not discover the multiple loan applications. In order to help mask the fraud, Qureshi rather than Quassani acted as the loan officer in the mortgage applications for the Moraine property. Based on false loan information, the second lender approved Butler for two loans totaling $825,000, which matched the inflated asking price that Qureshi had convinced the seller to increase from $679,900. Kickbacks totaling over $100,000 were funneled through two shell companies to the conspirators, who once again also shared their inflated commissions.

After the scheme was uncovered, Quassani, Qureshi, and Mathur were charged with wire fraud, mail fraud, and conspiracy to commit wire and mail fraud.[3] Qureshi and Mathur both pled guilty to conspiracy to commit wire and mail fraud and testified against Quassani at trial.

Prior to trial, Quassani was represented by attorney Peter S. Christiansen. However, shortly before trial, Christiansen moved to withdraw as counsel, averring "[t]hat a conflict exist[ed] between [him] and Mr. Quassani, interfering with [Christiansen's] ability to provide competent representation." ECF No. 52. Magistrate Judge Hoffman denied the motion. ECF No. 57. Shortly thereafter, Quassani consented to be represented by attorney Richard Tanasi, who was, at that time, an associate attorney at Christiansen's law firm. ECF No. 70. Tanasi represented Quassani during trial.

On July 10, 2013, after a three-day jury trial before this court, Quassani was convicted of one count of conspiracy to commit wire fraud and mail fraud under 18 U.S.C. § 1349, two counts of wire fraud under 18 U.S.C. § 1343, and two counts of mail fraud under 18 U.S.C. § 1341. ECF No. 89. The court sentenced him to a thirty-seven month term of imprisonment. ECF No. 127.

---

[3] Butler was not charged with any crimes for his role as a straw buyer.

3

Quassani appealed his conviction to the Ninth Circuit, arguing that (1) the United States engaged in improper vouching, (2) the United States should have been required to prove materiality on the conspiracy count, (3) the court should have replaced a juror with an alternate, and (4) the court committed a variety of sentencing errors. *See United States v. Quassani*, 593 Fed. App'x 627 (9th Cir. 2014); ECF No. 146. The Ninth Circuit affirmed Quassani's conviction and this court's sentence.

Quassani now brings this collateral attack of his conviction under 28 U.S.C. § 2255. He argues (1) ineffective assistance of counsel based on his attorney's alleged failure to investigate potential key witnesses; (2) ineffective assistance of counsel based on his attorney's failure to object to allegedly improper vouching and improper jury instructions; and (3) that his conviction was obtained by an unconstitutionally impaneled jury.

**II.     Legal standard**

Pursuant to 28 U.S.C. § 2255, a prisoner may move the court to vacate, set aside, or correct a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Id*. § 2255(b).

A petitioner can base a § 2255 motion on the ineffective assistance of counsel prior to conviction. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). In order to prevail on an ineffective assistance of counsel claim, the petitioner has the burden of proving two elements. "First, the defendant must show that counsel's performance was deficient," meaning that counsel was not functioning as a competent advocate. *Id*. at 687. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687. "The defendant must show that there is a reasonable

4

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### III. Ground 1: ineffective assistance of counsel (failure to investigate potential witnesses)

Quassani's central contention for this ground of collateral attack is that his attorneys allegedly failed to investigate the case prior to trial, including failing to contact a number of witnesses that Quassani asked his attorneys to call to testify on his behalf. ECF No. 154 at 3–4. The witnesses were all fellow loan officers who worked at the same brokerage as Quassani during the time of the scheme. Quassani contends that one of these potential witnesses, Anna Cui, was the loan officer who "handled the loan at the center of the scheme," rather than Quassani. *Id*. at 3. He alleges that Cui "would have attested that there was nothing peculiar about the Butler application, and significantly [that Quassani] did not participate in this application, anymore than he would have done for any other loan application." *Id*. at 10.

Quassani also contends that another loan officer, John Panich, "would have established that Butler willfully supplied all the information that was placed on the application, without coercion by" Quassani. *Id*. at 8. Quassani further alleges that two other loan officers, Eric Rodriguez and Crystal Perry, would have testified about an incident at the brokerage office when Quassani "confronted Qureshi and Anita Mathur, after discovering their fraud, thereafter barring them from the office." *Id*. at 9.

Quassani also argues that Tanasi, his trial attorney, should have called an expert witness to testify in order to provide "the jury basic understanding of the workings of a lending system." *Id*. at 8. Without elaborating further, Quassani alleges that this information would have revealed how he could not have effectuated the mortgage-fraud scheme without the other loan officers in the office knowing about it.

Finally, Quassani also contends that, in various communications with his attorneys, he attempted to discuss potential defenses and "professed his innocence and non-involvement in the fraudulent scheme orchestrated by Qureshi and Anita Mathur." *Id*. at 6, 11. However, his attorneys allegedly kept informing him of his guilt. *Id*.

5

Quassani argues that the purported deficiencies in his representation were caused by a legal "conflict of interest"—as opposed to an interpersonal conflict— that allegedly plagued Christiansen's and later Tanasi's representation of him. In support of this argument, Quassani highlights Christiansen's motion to withdraw as counsel in the case due to a "conflict" between himself and Quassani. Quassani argues that he developed mistrust of the entire law firm and that the alleged conflict of interest was thus imputed to Tanasi, despite the fact that Quassani consented to the transfer of representation to Tanasi. *Id*. at 6–7. Quassani further argues that, due to this conflict, he is not required to demonstrate prejudice in order to prevail on his claim of ineffective assistance of counsel.

Quassani is correct that, "[a]lthough a defendant who raises an effective assistance of counsel claim is ordinarily required to show prejudice, prejudice is presumed if the alleged violation is based on an actual conflict of interest." *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992) (internal citation omitted). However, the mere possibility of a conflict of interest is insufficient to establish a constitutional violation. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). The petitioner must make a factual showing on the record that an actual conflict of interest existed. *Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1992). Potentially divided allegiances do not constitute active representation of conflicting interests. *Paradis v. Arave*, 130 F.3d 385, 391 (9th Cir. 1997). Speculation will not substitute for evidence. *Morris*, 966 F.2d at 456.

After examining the briefings and record in this case, the court has determined that a § 2255 evidentiary hearing is warranted. As noted by the Ninth Circuit in Quassani's direct appeal,[4] "[t]he current record is silent . . . as to the reasons that trial counsel may have had for taking the actions he did." *Quassani*, 593 F. App'x at 629. While Quassani's allegations regarding the potential testimony that could have been elicited from his former colleagues are

---

[4] Quassani originally raised his claim of ineffective assistance of counsel on direct appeal. *Quassani*, 593 F. App'x at 629. However, the Ninth Circuit declined to hear the claim because, "'[a]s a general rule, [courts of appeal] do not review challenges to the effectiveness of defense counsel on direct appeal.'" *Id*. (quoting *United States v. Moreland*, 622 F.3d 1147, 1157 (9th Cir. 2010)).

6

vague, it is possible that such testimony could have contradicted at least portions of the United States' characterization of his role in the scheme. Quassani's allegations of a conflict of interest between himself, Christiansen, and potentially the entire law firm are even vaguer. The court concludes that, due to the uncertainty of the evidence before the court, a hearing regarding Quassani's allegations is necessary under 28 U.S.C. § 2255(b).

The court emphasizes, however, that it is Quassani's burden to prove that he was denied effective assistance of counsel. *See Hurles v. Ryan*, 752 F.3d 768, 779 (9th Cir. 2014) (citing *Strickland*, 466 U.S. at 687). In turn, Quassani must demonstrate his attorneys' deficient performance and a conflict of interest or, in the absence of such a conflict, both the performance and prejudice prongs of the *Strickland* analysis. In regards to the alleged conflict of interest, the court notes that the Ninth Circuit has clearly distinguished between an interpersonal conflict between an attorney and client and "legal conflicts of interest" resulting in Sixth Amendment concerns. *See, e.g.*, *Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008) (rejecting a defendant's argument "that his relationship with his public defender was dysfunctional due to his subjective distrust of the office and that this created a 'conflict,' entitling him to new counsel as a matter of Sixth Amendment right.").

The court also cautions Quassani that the attorney-client privilege that exists between himself and attorneys Christiansen and Tanasi will be waived during this hearing. *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003). Accordingly, if called to testify or asked to submit an affidavit by either Quassani or the United States, both attorneys may discuss the conversations between themselves and Quassani.

Finally, the court is of the view that Quassani, who is currently *pro se*, should be appointed counsel for purposes of the evidentiary hearing.

**IV.    Grounds 2 and 3**

Quassani raised all his remaining grounds for collateral attack on direct appeal. These include his arguments that (1) Tanasi failed to object to the government's vouching and jury instructions regarding materiality and (2) the court should have replaced one of the jurors who knew an Assistant U.S. Attorney involved in the case. ECF No. 149 at 4.

It is well established that "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding." *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979). Because the Ninth Circuit rejected these arguments on appeal, Quassani is barred from raising them in his collateral attack.

## V.  Certificate of Appealability

Finally, the United States requests that the court deny Quassani a certificate of appealability, arguing that he has failed to make "a substantial showing of the denial of a constitutional right[,]" as required under 28 U.S.C. § 2253. The court will reserve this issue until final decision in this matter.

## VI.  Conclusion

IT IS THEREFORE ORDERED that an evidentiary hearing shall be scheduled following petitioner Jawad "Joe" Quassani's appointment of counsel.

IT IS FURTHER ORDERED that counsel shall be appointed from the CJA panel for the limited purpose of representing Quassani at the aforementioned evidentiary hearing.

IT IS FURTHER ORDERED that Quassani's grounds 2 and 3 in his motion to vacate, set aside, or correct his sentence are DENIED.

IT IS SO ORDERED.

DATED this 28th day of September, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE