UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JAWAD "JOE" QUASSANI,

        Defendant.

Case No. 2:11-cr-00409-LRH-CWH

ORDER

Defendant Jawad "Joe" Quassani moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, asserting three grounds for relief. ECF No. 149. The court denied ground two and ground three of the motion on September 28, 2016. ECF No. 155. After holding an evidentiary hearing in regards to ground one and after considering the parties' post-evidentiary-hearing memorandums, the court now denies ground one. Accordingly, Quassani's motion is denied in its entirety. The court also denies Quassani a certificate of appealability.

**I.    BACKGROUND**

Quassani and his co-conspirators implemented a mortgage-fraud scheme designed to defraud lenders into issuing inflated mortgages and to generate kickbacks for Quassani and his co-conspirators. *See* EFC No. 155.[1] During the time in which the scheme was ongoing, Quassani used his position as a loan officer for a Las Vegas mortgage brokerage to assist a straw buyer in obtaining a mortgage. *Id.* To ensure that the straw buyer was approved for a mortgage large

---

[1] The court provided a more detailed summary of the mortgage-fraud scheme in the court's order on September 28, 2016. *See United States v. Quassani*, No. 2:11-CR-00409-LRH-CWH, 2016 WL 5660334 (D. Nev. Sept. 28, 2016). The court also summarized Quassani's arguments for relief from his sentence in the order. *Id.*

enough to purchase a property at an inflated asking price, Quassani listed the straw buyer's income on the mortgage application as more than three times his actual income. *Id.* Quassani also falsely indicated on the application that the straw buyer was purchasing the property for use as a primary residence. *Id.* Based on the false information, the straw buyer was approved for a loan, which was used to purchase the property and to fund the kickbacks received by Quassani and his co-conspirators. *Id.*

After a three-day trial, a jury convicted Quassani of one count of conspiracy to commit wire fraud and mail fraud under 18 U.S.C. § 1349, two counts of wire fraud under 18 U.S.C. § 1343, and two counts of mail fraud under 18 U.S.C. § 1341. ECF No. 89. The court sentenced Quassani to a thirty-seven-month term of imprisonment. ECF No. 127. On appeal, the Ninth Circuit affirmed Quassani's conviction and the court's sentence. ECF Nos. 142, 146; *United States v. Quassani*, 593 Fed. App'x 627 (9th Cir. 2014).

Quassani now brings a collateral attack of his conviction, moving to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 149. Quassani argues three grounds for relief: (1) ineffective assistance of counsel based on an alleged conflict of interest between Quassani and his attorneys as well as his attorneys' alleged failure to investigate potential key witnesses; (2) ineffective assistance of counsel based on his attorneys' failure to object to allegedly improper vouching and improper jury instructions; and (3) that his conviction was obtained by an unconstitutionally impaneled jury. *Id.* The court denied ground two and ground three on September 28, 2016, because the Ninth Circuit disposed of the same arguments in Quassani's earlier appeal. ECF No. 155. But the court did not deny ground one; the court instead ordered an evidentiary hearing to resolve the ambiguities concerning ground one. *Id.* Specifically, the court noted the vague nature of Quassani's claim of a conflict of interest with his attorneys and of Quassani's claim of his attorneys' failure to investigate potential key witnesses. *Id.* The court also ordered Quassani be appointed counsel for the hearing. *Id.*

The evidentiary hearing occurred on June 14, 2017. Transcript of Evidentiary Hearing ("EH Transcript"), *United States v. Quassani*, No. 2:11-cr-00409 (D. Nev. June 14, 2017), ECF No. 183. Five witnesses provided testimony: (1) attorney Peter Christiansen, (2) attorney Richard

Tanasi, (3) Jawad Quassani, (4) FBI agent Mark Staten, and (5) private investigator Arthur Von Ahn. *See id.* Christiansen represented Quassani prior to trial as court-appointed counsel. ECF No. 29. Shortly before trial, Christiansen moved to withdraw as counsel, but his motion was denied. ECF Nos. 52, 57. Shortly thereafter, Quassani consented to be represented by Tanasi. ECF No. 70. Staten worked as the FBI agent assigned to Quassani's underlying case. EH Transcript at 98:24–25. Von Ahn worked on Quassani's case as a private investigator for Christiansen and Tanasi. *Id.* at 104:2–21.

The witnesses provided testimony on several topics pertinent to Quassani's claim of ineffective assistance of counsel: (1) the trial theme and strategy of Quassani's defense: (2) the circumstances surrounding the alleged conflict of interest between Quassani and his attorneys; (3) the attorneys' alleged failure to investigate potential key witnesses; (4) Tanasi's opening statement at trial; (5) the decision that Quassani not testify at trial and the failure to conduct a mock examination; (6) the testimony and cross-examination of trial-witness Janet Lewis; and (7) the meetings shared between Quassani and his attorneys. *See id.*

Trial Theme and Strategy

Tanasi testified that he developed a trial theme for Quassani's defense: Quassani did not knowingly lie at any time on any of the loans. EH Transcript 38:15–16. Tanasi reiterated this theme throughout the evidentiary hearing. *Id.* at 36:19–22 (stating "our defense was going to be […] focusing on kind of that front end of the deals in the case and whether or not Mr. Quassani was truthful on the front end of the deals."); *id.* at 37:3–4 (stating "the defense of […] Mr. Quassani wasn't lying at any point in this whole transaction[.]"); *id.* at 41:12–15 (stating "the strategy of the defense was […] Mr. Quassani didn't lie at any time."); *id.* at 47:6–7 (stating "the bottom line on the defense was [Quassani] didn't know [about the inaccuracies on the reports, applications, or loan documents]").

To present the theme at trial, Tanasi testified that the defense focused on "the front end" of the mortgage-fraud scheme implemented by Quassani and his co-conspirators. *Id.* at 33:2–4. The "front-end" refers to Quassani's co-conspirators and to the documents relating to the fraudulent mortgage applications. *Id.* at 33:8–22.

3

Conflict of Interest

Christensen, Tanasi, and Quassani provided testimony regarding the alleged conflict of interest. *See* EH Transcript. Approximately one month before trial, Christensen moved to withdraw as Quassani's counsel, averring "[t]hat a conflict exist[ed] between [him] and Mr. Quassani, interfering with [Christiansen's] ability to provide competent representation." ECF No. 52.

Christiansen further explained the circumstances motivating his motion to withdraw at the evidentiary hearing. *See* EH Transcript at 12:1–13:25, 21:24–23:9. Christiansen stated that he "had concerns about the veracity of what [Quassani] said to the federal [authorities]" during a pre-trial proffer meeting for a parallel investigation into a similar matter. *Id.* at 12:11–13, 13:22–25. Christiansen later elaborated that his concerns were two-fold. *Id.* at 22:1–24: First, Christiansen believed that Quassani "had not been truthful" to the government agents, which compromised Christiansen's ability to place Quassani on the stand for questioning in front of the government agents. *Id.* at 22:6–10. Second, Christiansen learned from the proffer that Quassani showed "[sealed] discovery to other witnesses" and that Quassani allegedly had monies acquired from the scheme in the parallel investigation, making court-appointed counsel inappropriate for lack of indigency. *Id.* at 22:11–24. But Christiansen clarified that, to his recollection, he did not have a legal conflict of interest with Quassani. *Id.* at 23:6–9.

Despite Christiansen's motion to withdraw being denied, Quassani agreed to be represented by Tanasi. ECF No. 70. In order to prevent "souring [Quassani's] relationship with anybody else," Christiansen testified that he chose to not disclose his opinion regarding Quassani's veracity to Tanasi. EH Transcript at 24:1–4. Rather, Christiansen kept his concerns "privileged to [him]." *Id.* at 24:4. Tanasi confirmed that he did not share any discussions with Christiansen regarding the circumstances leading to the motion to withdraw. *Id.* at 29:3–6.

Quassani's allegations regarding a possible conflict consist of general characterizations. For example, he testified: "It's weird when I talked to [Christiansen]. It was not—it wasn't comfortable." *Id.* at 57:17–18. Additionally: "I did not understand [Christiansen's] conflict." *Id.* at 56:5–6. And further: "But as far as my understanding of conflict, I tried contacting Mr.

4

Christiansen a few—few—lots of times, and every time […] [I] was referred to Archie, the investigator." [2] *Id.* at 56:7–10. Finally, Quassani admitted that "hundreds of thousands of dollars" were deposited into his bank account in 2011 through 2012. *Id.* at 95:6–13. But Quassani still contended that he "did not have money to retain an attorney at that time." *Id.* at 97:3–4.

Investigation of Potential Witnesses

Tanasi, Quassani, Staten, and Von Ahn each provided testimony in regards to Quassani's allegation that the attorneys failed to investigate potential key witnesses. *See* EH Transcript.

Tanasi testified that he spoke with a potential witness named Anthony Brandel. EH Transcript at 35:19–20. He explained that Brandel did not testify for two reasons. *Id.* at 35:24–25. First, Brandel lacked "any real specific knowledge" of the issues in the case. *Id.* at 36:1–2. Therefore, Brandel's potential testimony was limited to character testimony about Quassani. *Id.* at 36:2–8. Tanasi explained that the defense chose not to offer character evidence on behalf of Quassani because "there were some concerns that could have come to light that could have rebutted the good-guy defense." *Id.* at 35:2–4. Second, Brandel did not testify because of impeachment concerns.[3] *Id*. at 36: 9–10.

Tanasi also testified that Quassani made "witness-related requests." *Id.* at 37:17. However, the potential witnesses identified by Quassani failed to provide any information about the issues of Quassani's case. *Id.* at 38:1–5. Therefore, like Brandel's potential testimony, the potential witnesses' testimony was limited to character evidence. *Id.* at 38:6–8. Given the potential witnesses' lack of personal knowledge of the facts at issue, Tanasi testified that he could not recall any witness who could have undermined the government's trial evidence. *Id.* at 49:18–50:5. Further, Tanasi clarified that one potential witness—Ann Cui—would damage Quassani's defense. *Id.* at 50:15–20. He based his opinion on statements Cui included in her FBI 302 report for the investigation into the mortgage-fraud scheme. *Id.*at 50:15–25.

/ / /

/ / /

---

[2] Quassani continues his testimony, admitting he spoke with Christiansen "a couple of times." *Transcript* at 56:12–16.

[3] Brandel, in fact, was a focus of the parallel investigation and ultimately convicted. *Transcript* at 86:19–87:8.

5

Quassani testified that he also requested his attorneys contact John Panich. *Id.* at 76:19–21. However, when questioned by Staten during the FBI investigation into the mortgage-fraud scheme, Quassani failed to mention any other potential witnesses. *Id.* at 100:1–17, 102:14–17.

Finally, Von Ahn testified that he attempted to find witnesses who could testify in Quassani's defense.[4] *Id.* 104:22–25. He spoke to Cui, Brandel, Peyman Kermanshahi, and Jaime Pena. *Id.* at 105:22–106:1. Von Ahn testified that Cui's testimony "would be very damaging" to Quassani's defense, which he opined based off her FBI 302 report. *Id.* at 107:9–21. Von Ahn also testified that the other potential witnesses could not provide personal knowledge or facts helpful to Quassani's defense. *Id.* at 108:2–20. When asked if he came across any evidence suggesting that other witnesses could corroborate Quassani's innocence, Von Ahn testified that he did not. *Id.* at 108:21–109:1.

Von Ahn also attempted to physically locate Panich but was unsuccessful. *Id.* at 106:3–13. Von Ahn "believe[s] […] that [he had] a telephone conversation with Mr. Panich," because Tanasi listed Panich as a character witness in his notes. *Id.* at 106: 7–13. Tanasi would have received the information regarding Panich's potential testimony only from Von Ahn. *Id.* at 106:15–16.

<u>Opening Statement at Trial</u>

At the evidentiary hearing, Tanasi was asked to recall the following line from his opening statement at trial: "Because those witnesses are the ones, the only witnesses, as the evidence will show, that can come into this courtroom and tell you that Mr. Quassani knowingly participated in a conspiracy." EH Transcript at 39:2–20. The statement refers to Quassani's co-conspirators and the straw buyer. *Id.* While Tanasi remembered the isolated statement, the following excerpt from Tanasi's opening statement is relevant for context:

> And in this case, there will be a lot of documents, and there will be a lot of exhibits that you will have to sort through, and you will hear from witnesses. But I'll submit to you that the witnesses you hear from, the most important witnesses you hear from are Mr. Butler, Miss Mathur, and Mr. Qureshi. Because those witnesses are the ones—the only witnesses, as the evidence will show—that can

---

[4] Von Ahn testified after refreshing his recollection with his notes, which were not prepared until 2016. EH Transcript at 109:10–110:14.

> come into this courtroom and tell you that Mr. Quassani knowingly participated in a conspiracy.
>
> … So those three witnesses that you hear from, keep this in mind when you do.
>
> The evidence will show that those three witnesses, two of them, Mr. Qureshi and Mr. Butler—Mr. Qureshi and Miss Mathur, rather, both have taken deals in this case to cooperate. Which means that their testimony, ladies and gentleman, is motivated.
>
> Plus, when they take their deals, you will learn that they pled guilty to fraud just as Mr. Winters pointed out to you. Fraud is lying. Right? So when they're testifying you will know that they've already admitted to lying.
>
> You will also hear from Mr. Butler. Now Mr. Butler, you will learn got a pass in this case. […] But as the government's already told you, he lied on his loan application. So when he's testifying, ladies and gentlemen, keep in mind you are listening to a liar, an admitted liar.

Transcript of Proceedings ("Trial Transcript 1") at Vol. 1, 152–153, *United States v. Quassani*, No. 11-cr-00409, (filed D. Nev. July 30, 2013), ECF No. 98.

### Decision that Quassani Refrain from Testifying

At the evidentiary hearing, Tanasi also explained that he advised Quassani not to testify at trial because Quassani could not offer evidence to support his defense. EH Transcript at 34:1–10. Further, if Quassani testified, the government would be allowed to introduce character evidence. *Id.* at 34:11–14. Tanasi remembered that Quassani "was okay" with the decision to not testify. *Id.* at 34:15–16. As a result, Tanasi never conducted a mock examination of Quassani in preparation for trial. *Id.* at 35:5–13.

When asked if Quassani "might have wanted to testify" at trial, Quassani answered in the affirmative. *Id.* at 62:7–10. But he admitted that he declined to do so based on discussions with and advice from his attorney. *Id.* at 62:11–16, 82:24–83:9.

### Cross-Examination of Trial-Witness Janet Lewis

Janet Lewis testified at Quassani's trial. Transcript of Proceedings ("Trial Transcript 2") at Vol. 2, 118–163, *United States v. Quassani*, No. 11-cr-00409, (filed D. Nev. July 30, 2013), ECF No. 99. She testified as an employee for one of the mortgage lenders targeted by the mortgage-fraud scheme. *Id.* at 119–122. Tanasi stipulated to Lewis serving as a witness. EH

7

Transcript at 40:14–18. He did so because Lewis' testimony did not rebut Quassani's defense; her testimony instead covered the effect of the false statements on the lender. *Id.* at 41:4–18.

Because Lewis' testimony did not rebut the defense's theme—that Quassani did not lie at any time on any of the loans—Tanasi did not examine her for bias in an effort "to keep the focus on the theory of the case." *Id.* at 41:19–42:7.

<u>Meetings Between Quassani and Attorneys</u>

Christiansen testified that he met with Quassani approximately four times. EH Transcript at 9:21–10:18. Tanasi testified that he "had several meetings" and "several conversations about the case" with Quassani. *Id.* at 32:19–24.

Quassani testified that he met with Christiansen approximately three times and spoke to Christiansen telephonically two or three times. *Id.* at 71:11–15. He also testified that he met with Tanasi a "couple of times." *Id.* at 72:13–19.

After the evidentiary hearing, each party submitted post-evidentiary-hearing memorandums. ECF Nos. 185, 186. Quassani also submitted a reply to the government's memorandum. ECF No. 187.

## II. LEGAL STANDARD

A prisoner may move the court to vacate, set aside, or correct a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

A petitioner can base a § 2255 motion on the ineffective assistance of counsel prior to conviction. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). In order to prevail on an ineffective assistance of counsel claim, the petitioner has the burden of proving two elements. "First, the defendant must show that counsel's performance was deficient," meaning that counsel was not functioning as a competent advocate. *Id.* at 687. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. "The defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### III. DISCUSSION

The court first addresses Quassani's claim of ineffective assistance of counsel. Because the court denies the claim—and therefore denies the last ground for relief asserted in Quassani's original motion—the court then addresses the certificate of appealability.[5]

#### A. Ineffective Assistance of Counsel

Quassani's original motion argues two bases for his claim of ineffective assistance of counsel: (1) a conflict of interest existed between Quassani and his attorneys; and (2) his attorneys failed to investigate potential key witnesses. ECF No. 149. Quassani's post-evidentiary-hearing memorandum asserts five additional bases: (1) his attorney made a prejudicial statement during the opening statement at trial; (2) his attorney failed to conduct a mock examination to prepare Quassani to testify; (3) his attorney failed to adequately cross-examine Lewis at trial; (4) his attorneys executed a defense strategy with a limited scope, which correlated to the need for only minimal preparation; and (5) his attorneys failed to spend sufficient time with Quassani, resulting in inadequate trial preparation. Each bases for relief is discussed in turn.

##### 1. Conflict of Interest

Prior to the evidentiary hearing, Quassani argued that a conflict of interest existed between him and his attorneys, which resulted in a Sixth Amendment violation. ECF Nos. 149, 154. The court found Quassani's argument to be too vague to grant relief. ECF No. 155. Despite the court holding an evidentiary hearing to provide Quassani an opportunity to remedy the vagueness issue, Quassani did not pursue the argument in his post-evidentiary-hearing memorandum. *See* ECF Nos. 185, 187. Regardless, with finality as its objective, the court now considers the argument in light of the testimony gained from the evidentiary hearing.

---

[5] The court previously deferred ruling on the government's request to deny Quassani a certificate of appealability. ECF No. 155.

The conflict-of-interest argument fails because the testimony from the evidentiary hearing does not demonstrate that a legal conflict existed between Quassani and his attorneys; rather, the testimony reveals the existence of an interpersonal conflict. When claiming ineffective assistance of counsel based on a conflict of interest, a defendant must show that "his counsel actively represented conflicting interests." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). The conflict must be a legal conflict of interest, meaning "an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest and those of the client." *Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008). An interpersonal conflict—such as personality conflicts, artistic conflicts, family conflicts, and other antagonistic issues—will not suffice. *Id.*; *see also Morris v. Slappy*, 461 U.S. 1, 13 (1983) (holding that a court could not guarantee a meaningful attorney-client relationship to a defendant in regards to the rapport between the defendant and his attorney). While Christiansen cited a conflict between him and Quassani as the basis for his motion to withdrawal, the evidentiary hearing clarified that the conflict to which Christiansen referenced in his motion concerned an interpersonal conflict: Christiansen's unfavorable opinion of Quassani's veracity. Christiansen's antagonistic opinion amounts to an interpersonal conflict—not a legal conflict of interest. Christiansen, in fact, testified that no legal conflict existed between him and Quassani. As a result, no legal conflict could have been imputed to Tanasi. Therefore, Quassani failed to demonstrate that a legal conflict existed between him and his attorneys.

Further, Quassani's conflict-of-interest argument fails because Quassani did not demonstrate that the alleged conflict resulted in deficient performance of counsel. Prejudice is presumed when a defendant claims ineffective assistance of counsel based on "an actual conflict of interest." *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992). However, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Christiansen and Tanasi both testified that the two attorneys never shared a discussion regarding the motivation for Christiansen's withdrawal. Tanasi, therefore, determined trial strategies with an untainted opinion of Quassani's character.

10

The trial theme and strategies were consistent, were zealously pursued, and were well within the range of reasonable professional assistance. Quassani offers no evidence to the contrary. Accordingly, Quassani fails to establish a deficient performance of his counsel.

Finally, Quassani's testimony that generally refers to an uncomfortable attorney-client relationship and to difficulties contacting Christiansen do not establish a legal conflict. Like his initial claim, the testimony is too vague to provide for relief under the *Strickland* test. Further, his cursory claims also fail to establish a legal conflict as described above. Consequently, the court denies Quassani's conflict-of-interest argument.

### 2. *Investigation of Potential Witnesses*

Like the conflict-of-interest argument, prior to the evidentiary hearing, Quassani argued that his attorneys failed to investigate potential witnesses. ECF Nos. 149, 151. After finding the argument to be too vague to grant relief and after holding an evidentiary hearing to pursue the argument, Quassani omitted the argument from his post-evidentiary-hearing memorandum. *See* ECF Nos. 185, 187. In an effort to achieve finality, the court now considers the argument in light of the testimony from the evidentiary hearing.

Quassani has not established that Christensen or Tanasi's performance was deficient because Quassani did not identify any potentially favorable witnesses that his attorneys failed to investigate. "[S]trategic choices made after thorough investigation […] are virtually unchallengeable." *Strickland*, 446 U.S. at 690; *see also McDonald v. United States*, 282 F.2d 737, 740–41 (9th Cir. 1960) (holding that an attorney's decision to not subpoena a witness was not ineffective assistance of counsel when "[t]here was good reason not to" call the witness at trial). At the evidentiary hearing and in his original motion, Quassani named a handful of potential witnesses allegedly relevant to his underlying conviction. Christiansen, Tanasi, and Von Ahn investigated the prospective testimony of each potential witness. Through the investigations, the attorneys determined that the potential witnesses' testimony would be detrimental to Quassani's defense because, in large part: (1) the potential witnesses lacked personal knowledge of the issues in Quassani's case; (2) the prospective testimony was limited to character evidence—evidence the defense disallowed at trial out of concerns of a successful

rebuttal by the government; and (3) the prospective testimony was subjected to imminent impeachment issues. Further, Tanassi and Von Ahn found that the testimony of at least one potential witness—Anna Cui—would cause actual damage to Quassani's defense based on a statement Cui submitted to the FBI. Based on the foregoing, Tanasi and Von Ahn both testified that their investigations did not result in any favorable witnesses to Quassani's defense. Quassani offered no evidence to the contrary. Accordingly, Quassani fails to demonstrate that his counsel deficiently performed by deciding to not call the potential witnesses at trial.

Quassani also has not established that his attorneys' allegedly deficient performance prejudiced his case because Quassani did not provide any potential testimony that would have rebutted the government's case. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, a defendant bears the burden of establishing by a reasonable probability that the outcome would have been different. *Id.* Quassani did not provide any evidence of the testimony that the potential witnesses could have provided to rebut the government's case. Quassani therefore failed to meet the burden under *Strickland*. The court therefore denies Quassani's argument that his attorneys failed to investigate potential witnesses in violation of the *Strickland* test.

### 3. Opening Statement at Trial

In his post-evidentiary-hearing memorandum, Quassani first argues that Tanasi provided ineffective assistance of counsel during opening statements. EFC No. 185 at 3. Specifically, Quassani criticizes a portion of Tanasi's opening statement, arguing that the statement places an emphasis on the co-conspirators testimony and indicates the co-conspirators could confirm Quassani's guilt. *Id.* The government responds by highlighting the context in which Tanasi made the particular statement. EFC No. 186 at 3.

When considering the context of Tanasi's entire opening statement, Quassani fails to establish that the statement constitutes deficient performance under *Strickland*. When read in context, Tanasi's statement initiated the attack on the government's evidence that rebutted the defense's theory. Through the statement, Tanasi isolated the witnesses that could testify to the "front end" of the mortgage-fraud scheme. He explained that only those witnesses—the co-

conspirators—could testify that Quassani knowingly participated in the charged crime. After explaining that only the co-conspirators could provide that essential evidence, Tanasi described with particularity why each of the co-conspirators could not be trusted. He particularly mentioned that (1) two of the co-conspirators were motivated to cooperate based on plea deals; (2) the same two co-conspirators already pled guilty to fraud, making them admitted liars; and (3) the third co-conspirator, the straw buyer who was never charged, admitted to lying on the loan application. Based on the context in which Tanasi made the statement, the statement served to introduce the defense's theory to the jury. *See Chen v. Neven*, 676 F. App'x 659, 661 (9th Cir. 2017) (denying a claim for ineffective assistance of counsel because the "opening statement was a reasonable tactical decision").

Given the context in which Tanasi made the statement, Quassani also fails to establish prejudice. Tanasi's statement provided the foundation on which the defense built upon its theme during trial and did so in a manner consistent with the trial strategy agreed upon during trial preparation. Quassani's attempt to distort the statement into one that advocated for Quassani's guilt is without merit. The court therefore denies Quassani's contention that the statement violates the *Strickland* test.

        *4. Decision that Quassani Refrain from Testifying and Lack of Mock Examination*

Quassani next argues that Tanasi provided ineffective assistance by failing to conduct a mock examination of Quassani in the event that Quassani testified at trial. ECF No. 185 at 4. The government responds that a mock examination was not required because Quassani determined that he would not testify before trial. ECF No. 186 at 5.

The failure to conduct a mock examination of Quassani does not amount to ineffective assistance of counsel because Quassani agreed to refrain from testifying at the advice of his counsel to prevent the government from using unfavorable character evidence. When making a claim for ineffective assistance of counsel, a defendant bears the burden of establishing that the challenged action could not "be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Tanasi advised Quassani not to testify for two reasons: (1) Quassani could not offer evidence that supported his defense and (2) the government could use character evidence to impeach him.

13

Quassani agreed with the advice of his counsel. As a result, Tanasi chose to forgo spending preparation time on conducting a mock examination of Quassani. Tanasi's decision was reasonable because it was improbable that Quassani would testify since he could not provide helpful evidence. It was also based on the sound tactical decision that Quassani should refrain from testifying in order to prevent the introduction of harmful character evidence. Therefore, the failure to conduct a mock examination does not fall outside of the wide range of reasonable professional assistance contemplated by *Strickland*.

Quassani's testimony that he "might have wanted to testify" does not sway the court. As the government argues in its memorandum, there is no evidence that Quassani doubted his decision during trial or that he revisited the decision with his attorney during trial. Accordingly, Quassani fails to provide any evidence suggesting that his decision to follow Tanasi's advice prejudiced his case. The court therefore denies Quassani's argument that the lack of a mock examination violates the *Strickland* test.

### 5. *Cross-Examination of Trial-Witness Lewis*

Quassani also contends that Tanasi failed to adequately cross-examine Lewis at trial. ECF No. 185 at 5. The government argues that Tanasi cross-examined Lewis in a manner consistent with the defense strategy. ECF No. 186 at 6.

Quassani's argument fails because Tanasi's decisions to stipulate to Lewis' testimony and to conduct a short cross-examination of Lewis qualify as a sound tactical decision. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (holding that an attorney's decision to focus on certain issues to the exclusions of others is entitled to a strong presumption that the attorney "did so for tactical reasons rather than through sheer neglect"); *see also Gibson v. Shepard*, 246 Fed. App'x 431, 432–33 (9th Cir. 2007) (holding an attorney's stipulation that his client possessed marijuana did not amount to ineffective assistance of counsel when the decision was made in order to focus on a different element required for the crime and to gain credibility with the jury). Lewis' testimony regarded the materiality of the false statements as experienced by the mortgage lenders. It did not challenge the defense that Quassani never knowingly lied on the "front end" of the mortgage transactions. Tanasi explained that, for this reason, he stipulated to Lewis'

testimony and conducted a brief cross-examination in order to keep the jury focused on the defense's theory of the case. Tanasi's decision to focus on the defense's theory of the case to the exclusion of issues unrelated to the defense theory was a sound tactical decision. The court therefore denies Quassani's argument that the cross-examination of Lewis amounted to ineffective assistance of counsel.

### 6. Attorneys' Preparation for Quassani's Defense and Scope of the Defense

Quassani next argues that Tanasi chose a trial strategy that confined the defense to challenging the veracity of the government's witnesses at trial, which correlated to a minimal need for preparation. ECF No. 185 at 5–7. The government responds that Quassani has not provided evidence that Tasani's preparation impeded the defense and that the trial strategy is entitled to substantial deference under *Strickland*. ECF No. 186 at 6.

Before trial, Christiansen, Tanasi, and Von Ahn investigated potential witnesses to determine if any person could testify in Quassani's favor at trial. The investigations were unsuccessful. Accordingly, at trial, Tanasi focused on the "front-end" of the mortgage-fraud scheme and presented the defense that Quassani never knowingly lied on the mortgage documents. Tanasi executed the defense strategy by focusing on the veracity of the government's witnesses. He focused on the witnesses' motivations for testifying against Quassani in his opening statement; he focused on the witnesses being admitted liars in his opening statement; and he crossed-examined the witnesses at trial to challenge their credibility. Tanasi presented a consistent and well-executed defense. Therefore, Tanasi's conduct did not fall outside of the wide range of reasonable professional assistance required by *Strickland*. *See Strickland*, 466 U.S. at 689 (requiring the reviewing court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Further, even if the chosen strategy confined the defense, Quassani fails to establish by a reasonable probability that the outcome would have been different if another defense was presented. *See Strickland*, 466 U.S. at 693 (requiring the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Quassani merely suggests that the allegedly confined defense had

some conceivable effect on the outcome of the proceeding. He does not identify any evidence or alternative theories that could have changed the outcome of his case, rendering his argument insufficient. The court therefore denies the argument that Quassani's attorneys chose a confined defense in an effort to minimize the required preparation in violation of the *Strickland* test.

       *7. Meetings Between Quassani and Attorneys*

In his final argument, Quassani contends that his attorneys spent an inadequate amount of time with him to prepare for trial against the government. ECF No. 185 at 7. The government counters that Tanasi fails to identify any insufficiency in representation that resulted from lack of preparation. ECF No. 186 at 6.

Quassani's final argument fails because Quassani merely recites the number of times counsel met with him before trial but does not provide evidence that his counsel failed to present a prepared and reasonable defense on his behalf. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In arguing that counsel spent insufficient time with him to prepare for trial, Quassani recites the number of meetings and discussions shared between Quassani and his attorneys prior to trial. He then relies on the number of communications to summarily assert that the preparation was lacking. But Quassani ignores the preparation efforts that occurred outside of the communications. For example, Quassani does not mention his attorneys' investigation into potential witnesses or his attorneys' preparation of the opening statement despite both being topics at the evidentiary hearing.

Quassani also fails to identify any shortcomings in the defense's presentation at trial as a result of insufficient preparation. Therefore, even if the number of meetings were unreasonable, Quassani did not present evidence establishing prejudice that resulted from the allegedly deficient performance. The court therefore denies Quassani's argument that his counsel spent insufficient time with him to prepare for trial in violation of the *Strickland* test.

**B. Certificate of Appealability**

The rules governing 28 U.S.C. § 2255 proceedings require a district court to issue or deny a certificate of appealability when entering a final order adverse to the applicant. 28 U.S.C. §

2255 Governing Rule 11(a). A petitioner must receive a certificate of appealability in order to proceed with an appeal. 28 U.S.C. § 2253(c)(1). To receive a certificate of appealability, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Quassani fails to make a substantial showing of the denial of a constitutional right in his petition. No reasonable jurist would find that the court's denial of Quassani's petition is debatable or that Quassani's claims were adequate to deserve a certificate of appealability. The court therefore denies Quassani a certificate of appealability.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Jawad "Joe" Quassani's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 149) is **DENIED**.

IT IS FURTHER ORDERED that Defendant Jawad "Joe" Quassani is **DENIED A CERTIFICATE OF APPEALABILITY**.

IT IS SO ORDERED.

DATED this 16th day of August, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE